# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| MICHELLE M. AUGUSTYNIAK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:14-CV-229-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Michelle M. Augustyniak on July 3, 2014, and Plaintiff's Brief in Support of Motion for Summary Judgment [DE 17], filed by Plaintiff on December 9, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On February 17, 2015, the Commissioner filed a response, and on March 13, 2015, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On April 7, 2009, Plaintiff filed an application for Child's Disability Benefits and Supplemental Security Income with the U.S. Social Security Administration alleging that she became disabled on April 7, 2006. Plaintiff's application was denied initially and upon reconsideration. On April 29, 2015, an Administrative Law Judge ("ALJ"), after a hearing at which Plaintiff, with an attorney, and a Vocational Expert ("VE") testified, issued a decision finding the Plaintiff not disabled. The Appeals Council remanded the case due to deficiencies in the ALJ's decision. On June 13, 2012, ALJ Romona Scales held a hearing at which Plaintiff, with an attorney, Plaintiff's mother Marguerite Lieber, and a VE testified. On November 30, 2012, the ALJ issued a decision finding Plaintiff not disabled. The ALJ's decision became the Commissioner's final

decision when the Appeals Council denied Plaintiff's request for review on May 6, 2014. See 20 C.F.R. § 404.981.

The ALJ made the following findings under the required five-step analysis:

1. The claimant was born on November 1, 1986, making her not yet 22 as of April 7, 2006, the alleged onset date.

2. The claimant has not engaged in substantial gainful activity since April 7, 2006, the alleged onset date.

3. The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, and status post fractures from a motor vehicle accident.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. After careful consideration of the entire record, the ALJ found that claimant has the residual functional capacity to perform light work, which includes the ability to lift and/or carry and push and/or pull up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk six hours in an eight hour workday, and sit six hours in an eight hour workday. She can understand, remember, and carry out simple, routine, repetitive tasks, and the claimant is able to maintain adequate attention and concentration for those tasks. She can interact on at least a superficial and ongoing basis with coworkers and supervisors. The claimant can have no contact with the general public. She requires work free of fast-paced production, and that can be performed best independent of others. The claimant can manage changes in the work place.

6. The claimant has no past relevant work.

7. The claimant was born on November 1, 1986, and was 19 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Consider the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 7, 2006, through the date of the ALJ decision.

Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

Plaintiff was 19 years old on April 7, 2006, when she was hit by an automobile in a hit-and-run. Plaintiff suffered multiple broken bones and required multiple surgeries. Plaintiff has severe impairments of major depressive disorder, generalized anxiety disorder, borderline intellectual functioning, and status post fractures from the motor vehicle accident. Plaintiff also has non-severe impairments of cognitive disorder secondary to traumatic brain injury, sinus problems, chronic headaches, history of cervical cancer, and jaw pain. Plaintiff also has a history of self-cutting and in October 2006 was admitted to the hospital for a suicide attempt after cutting her neck during an argument with her boyfriend. As well as seeking treatment for her physical impairments, Plaintiff started treatment with Dr. Kahn, a psychiatrist, in October 2009. In March 2011 and May 2012, Dr. Kahn opined that Plaintiff was unable to work due to her mental illnesses. Plaintiff was examined by two state psychologists, Dr. Clark and Dr. Rozenfeld. Both state psychologists found a variety of mild and moderate limitations, including moderate limitations in concentration, persistence, and pace.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, the claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations that began before she became twenty-two years old. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§

423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f); 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functioning capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [claimant's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

**A.     Credibility**

Plaintiff argues that the ALJ's credibility analysis was deficient. The Commissioner argues that the ALJ's credibility analysis was not patently wrong.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve []pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p require the ALJ to consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated

by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ found Plaintiff's statements not credible with respect to the intensity, persistence and limiting effects of her claims. The ALJ mentions twice that she discounted Plaintiff's testimony based on failure to seek care for a period of time. AR 20, 21. The ALJ did not, however, inquire into the Plaintiff's reasons for failure to seek care. This is especially problematic with regard to her mental health treatment, where Plaintiff went three years without mental health treatment and her psychiatrist's notes reflect that the gap was because of a loss of medical insurance. Rather than make an inquiry with Plaintiff as required, the ALJ speculates,

> [w]hile the undersigned is sympathetic to the fact the claimant may have lacked the funds to pay for treatment and/or medication, if her mental impairments were truly as limiting as she suggests, the undersigned would have expected her to seek out alternative, less expensive treatment methods, or any free medical services, that may have been available in her community.

The ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A]n ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference . . . The claimant's 'good reason' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects ); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any

inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). In this case, the ALJ did not inquire into Plaintiff's reasons for discontinuing treatment despite drawing inferences about Plaintiff's credibility, while speculating even though the inability to pay is considered a good reason for not seeking medical care. Accordingly, the Court remands the case for a new credibility analysis that fully considers Plaintiff's testimony and the entirety of the record in compliance with the applicable directives.

**B.      Residual Functional Capacity**

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362

9

F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to [her] conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

    1.    *Basis of Residual Functional Capacity*

Plaintiff argues that the ALJ did not provide a proper basis for the RFC determination. The Commissioner argues that the ALJ supported his RFC finding with substantial evidence.

In this case, no physician opined about Plaintiff's physical limitations. Although the ALJ went through a litany of medical findings in Plaintiff's medical history, she did not explain how she arrived at the RFC restrictions. The Court is not persuaded by the Commissioner's argument that the "ALJ's RFC finding was not only based on the medical evidence, but was very favorable to Plaintiff." Rather, the Court is concerned that by simply listing a litany of medical findings, none of which directly address what limitations Plaintiff may have from them, the ALJ is making medical determination as to what she believes the physical limitations would be from such medical evidence. The Seventh Circuit has repeatedly held that ALJs are not to make their own independent medical findings. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). ALJs have been warned not to "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases). The ALJ failed to build a logical bridge between the medical evidence and her determination that Plaintiff could sit, stand, and lift, to the degree she described in the RFC. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("The rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to 'stand or walk for six hours' in a typical work day . . ."); *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)

("[T]he ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); *Barrett v. Barnhart*, 355 F.3d 1065 (7th Cir. 2004) (finding reversible error when ALJ determined that claimant could stand for two hours when there was no medical evidence to support such a conclusion).

The Court is also concerned about the apparent inconsistent consideration of the state consultants. Twice the ALJ stated she gave "substantial weight" to the state consultants based on the record as a whole. AR 17, 23. Despite this, she gave little weight to Dr. Rozenfeld's opinion with respect to the finding that Plaintiff had moderate difficulty in activities of daily living based on the "record as a whole, including the testimony evidence," without specifically explaining the evidence that lead to this conclusion. The Court questions the piecemeal approach to this, especially where the ALJ has stated multiple times that the opinion received great weight and does not specify exactly what evidence contradicts the statement. It is not apparent to the Court how the record as a whole warrants giving the opinion little weight and substantial weight, at the same time.

The ALJ "must provide a 'logical bridge' between the evidence and [her] conclusions." *O'Connor-Spinner*, 627 F.3d at 618. The ALJ does not explain the basis of the physical limitations in the RFC and "[s]he may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012). The ALJ also does not explain her inconsistent treatment of the state reports. Accordingly, the Court remands the case for a new RFC.

2. *Treating Physician*

Plaintiff argues that the ALJ failed to properly weight the medical opinion of Plaintiff's treating doctor. The Commissioner argues that the ALJ considered the opinion and reasonably gave it little evidentiary weight based on the totality of the evidence.

11

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188 at *3. To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389 (1971)); *see also Schmidt*, 395 F.3d at 744.

If the ALJ declines to give a treating source's opinion controlling weight, she must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' [her] reasons." *Elder,* 529 F.3d at 415 (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a

consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Dr. Khan, Plaintiff's treating psychiatrist since 2009, indicated in March 2011 and May 2012 that Plaintiff was unable to work due to her chronic mental illnesses. AR 1027, 1043. The ALJ stated that she gave little weight to Dr. Kahn's assessment based on the "totality of the evidence," but only references back to Dr. Kahn's reports in support of this finding, which contain information appearing to support the conclusion, including the mental illnesses, the length of mental illnesses, the symptoms, the medications prescribed, and other information. The ALJ also appears to discount Dr. Kahn's opinion due to gaps in Plaintiff's treatments, which is addressed above. The ALJ further cites Dr. Kahn's notes that there is no evidence of "persecutory delusions" or "formal thought disorder" and "her judgment and insight have also been noted to be fair" apparently in support of the ALJ's determination. AR 24. These particular findings, however, do not conflict with Dr. Kahn's other findings, which include generalized anxiety disorder with panic attacks, bipolar disorder, and depression, for which delusions were not alleged. Along with the language quoted by the ALJ, Dr. Kahn's report also states that Plaintiff's "affect [was] sad" and Plaintiff "was crying in the session and was anxious" and "was anxious and restless during the session," AR 1042, which appears to be the kind of "cherry-picking" of mental health evidence the Seventh Circuit warns against. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs,

is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

The ALJ did not address the factors enumerated in 20 C.F.R. § 404.1527(c) as they applied to the treating physician and did not fully explain the reasons she discounted Dr. Kahn's opinion. This case is being remanded for a new RFC and it is suggested that the ALJ conduct a thorough analysis of the treating physician's opinion.

3. *Vocational Expert*

The Court is also concerned by the ALJ's consideration of the mental limitations in the RFC. The ALJ gave substantial weight to both of the state psychological consultants, Dr. Clark and Dr. Rozenfeld. AR 17, 23. Both consultants found moderate difficulties in maintaining concentration persistence or pace; limitations the ALJ found were accurate. AR 915, 1065. The ALJ did not include these limits into the RFC.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers."). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform, resulting in an incorrect disability determination. *Kasarsky*, 335 F.3d at 543.

Where there are limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that

14

this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id*.

The ALJ limited Plaintiff to "understand, remember, and carry out simple, routine, repetitive tasks" and required "work free of fast-paced production, and that can be performed best independently of others," which does not address the moderate limitations on concentration, persistence, and pace. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Young*, 362 F.3d at 1004 (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations). The Court suggests that on remand the ALJ fully explain how she accounted for Plaintiff's moderate limitations in concentration, persistence, and pace.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the relief requested in the Plaintiff's Brief in Support of Motion for Summary Judgment [DE 17], and REMANDS this matter for further proceedings consistent with this opinion.

SO ORDERED this 1st day of September, 2015.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record

15